UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| R.I. SEEKONK HOLDINGS, LLC and H. CHARLES TAPALIAN, SR., <br><br> Plaintiffs, <br><br> v. <br><br> MICHELLE A. HINES, individually, and in her capacity as a Member of the TOWN OF SEEKONK BOARD OF SELECTMEN, <br><br> Defendant. | Case No. 19-cv-10230-DJC |

## MEMORANDUM AND ORDER

**CASPER, J.**                                              November 21, 2019

### I.     Introduction

Plaintiffs R.I. Seekonk Holdings, LLC ("RISH") and H. Charles Tapalian, Sr., ("Tapalian") (collectively, "Plaintiffs") have filed this lawsuit against Defendant Michelle A. Hines ("Hines"), a member of the Town of Seekonk Board of Selectman, alleging a violation of 42 U.S.C. § 1983, a violation of Mass. Gen. L. c. 12 § 11H-11I and defamation. D. 1-3. Hines has moved for judgment on the pleadings. D. 17. For the reasons stated below, the Court DENIES the motion.

### II.    Standard of Review

Rule 12(c) allows a party to move for judgment on the pleadings at any time "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) is "ordinarily accorded much the same treatment" as a Rule 12(b)(6) motion. Aponte-Torres v. Univ. of P.R., 445 F.3d 50, 54 (1st Cir.

2006). To survive a motion for judgment on the pleadings, therefore, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Because a motion for judgment on the pleadings "calls for an assessment of the merits of the case at an embryonic stage," the Court "view[s] the facts contained in the pleadings in the light most favorable to the nonmovant and draw[s] all reasonable inferences therefrom" in their favor. Pérez-Acevedo v. Rivero-Cubano, 520 F.3d 26, 29 (1st Cir. 2008) (citation omitted).

On a Rule 12(c) motion, unlike a Rule 12(b) motion, the Court considers the pleadings as a whole, including the answer. See Aponte-Torres, 445 F.3d at 54-55. Those assertions in the answer that have not been denied and do not conflict with the assertions in the complaint are taken as true. See Santiago v. Bloise, 741 F. Supp. 2d 357, 360 (D. Mass. 2010). In addition, "[t]he court may supplement the facts contained in the pleadings by considering documents fairly incorporated therein and facts susceptible to judicial notice." R.G. Fin. Corp. v. Vergara-Nuñez, 446 F.3d 178, 182 (1st Cir. 2006). Still, "[l]ike Rule 12(b)(6), Rule 12(c) does not allow for any resolution of contested facts; rather, a court may enter judgment on the pleadings only if the uncontested and properly considered facts conclusively establish the movant's entitlement to a favorable judgment." Aponte-Torres, 445 F.3d at 54.

### III. Factual Background

Unless otherwise indicated, the following summary is based on the facts as alleged in the complaint and the exhibits referenced therein, D. 1-3, and, to the extent they are not disputed, the facts contained in Hines's answer, D. 5. RISH owns and operates a development of luxury apartments known as Greenbrier Village Luxury Apartments ("Greenbrier Village") in Seekonk, MA. D. 1-3 ¶¶ 8-11. Tapalian is a majority member and manager of RISH. Id. ¶ 2. An

approximately twenty-two acre parcel of land known as the Showcase Property abuts Greenbrier Village. Id. ¶ 24. The Showcase Property sits in a split zoning district where a portion of the property is zoned "Highway Business" and the remainder of the property is zoned "Rural Residential." Id. ¶ 26. In 2017, the Town of Seekonk—through its Board of Selectmen and Planning Department—considered rezoning the entire Showcase Property to "Highway Business." Id. ¶ 27. Plaintiffs, through Tapalian, attended various meetings discussing the proposed rezoning of the Showcase Property. Id. ¶¶ 28-31. At these meetings, Plaintiffs expressed significant concerns that the rezoning would permit the opening of a used car lot or auto auction which would impact the abutting Greenbrier Village. Id. ¶ 30. The proposal to change the Showcase Property's zoning failed to pass during the Town's 2017 Annual Fall Meeting. Id. ¶¶ 32-37. In January 2018, the Town considered renewing its effort to rezone the Showcase Property as Highway Business. Id. ¶¶ 38-43. At one meeting considering the Showcase Property's rezoning, Hines, one member of the Seekonk Board of Selectman, expressed concern that statements made by members of the public about used car lots were "insulting" and "defamatory." Id. ¶ 40.

To protect the Showcase Property from being rezoned, Plaintiffs purchased the Showcase Property and created a plan to develop the portion abutting Greenbrier Village into additional residential units. Id. ¶¶ 44-46. Pursuant to this plan, Plaintiffs submitted to the town a petition which sought to incorporate the rear portion of the Showcase Property currently zoned Rural Residential into the adjacent Multifamily Development Overlay District ("Plaintiffs' Rezoning Proposal"). Id. ¶¶ 47-48. On December 27, 2018, the Seekonk Board of Selectmen met to discuss Plaintiffs' Rezoning Proposal. Id. ¶ 51.

The December 2018 meeting was open to the public and televised live on local access channels. Id. ¶¶ 70-71. RISH's legal representative, Tapalian, town officials and Seekonk

residents attended the meeting. Id. ¶¶ 52, 70. During this December 2018 meeting, Hines questioned Plaintiffs' counsel about their proposal. D. 1-3 Exh. 1 at 4:21-26:45. As part of her questioning, Hines said that Plaintiffs should not have "maligned used car dealers in town" and expressed concern that Seekonk lost an auto auction business. D. 1-3 ¶¶ 63-64. Hines further expressed concern that Plaintiffs had not kept up with promises to its purchasers. Id. ¶ 57. Hines explained that she would oppose Plaintiffs' effort to rezone in addition to any further efforts by Plaintiffs to construct condominiums in town. Id. ¶¶ 66-67. Hines was the only member of the Seekonk Board of Selectman to vote against establishing Plaintiffs' proposed zoning change as a warrant article, scheduling a special town meeting on the petition and referring it to the Planning Board for consideration and public hearing. Id. ¶ 68.

## IV. Procedural History

Plaintiffs instituted this action on January 11, 2019, in Bristol Superior Court, D. 1-3, and on February 4, 2019, Hines removed the case to this Court, D. 1. Hines has now moved for judgment on the pleadings as to all claims. D. 17. The Court heard the parties on the pending motion and took these matters under advisement. D. 24.

## V. Discussion

### A. Count I: 42 U.S.C. § 1983 Claim

Plaintiffs bring federal constitutional claims against Hines in both her individual and professional capacity pursuant to 42 U.S.C. § 1983. D. 1-3 ¶¶ 82-93. To state a claim for relief under Section 1983, a plaintiff must satisfy two elements: first, that the defendant acted under the color of law; and second, that her conduct deprived plaintiffs of rights secured by the Constitution or by federal law. See Gagliardi v. Sullivan, 513 F.3d 301, 306 (1st Cir. 2008) (citing Rodríguez-Cirilo v. García, 115 F.3d 50, 52 (1st Cir. 1997)).

### *1. Acting Under Color of Law*

It appears that Hines is challenging the Section 1983 claim brought against her in her individual capacity by asserting that only the government can violate the First Amendment and that Plaintiffs will not be able to show the requisite state action against her in her individual capacity. D. 18 at 10. Section 1983 claims first require a showing that the defendant acted under the color of law. See Gagliardi, 513 F.3d at 306. While Section 1983 does not apply to private individuals acting in a purely personal capacity, see Destek Grp., Inc. v. N. H. Pub. Utilities Comm'n, 318 F.3d 32, 40 (1st Cir. 2003) (explaining that "[o]nly when a private individual's conduct can be deemed 'fairly attributable to the State' will a [Section] 1983 cause of action exist against that individual"), "Section 1983 supplies a private right of action against a person, who, under the color of state law, deprives another of rights secured by the Constitution or by federal law," Santiago v. Puerto Rico, 655 F.3d 61, 68 (1st Cir. 2011) (citation omitted).

Hines relies on McGuire v. Reilly, 386 F.3d 45, 60 (1st Cir. 2004) to support her proposition that a Section 1983 action does not lie against her in her individual capacity, but that case is distinguishable. In McGuire, a group of women challenged Massachusetts' buffer zone laws by arguing, in part, that their First Amendment rights were violated by private individuals without any government affiliation. See id. The court rejected these arguments by explaining that these individuals were "private[ly] jousting in the speech marketplace" and First Amendment violations require state action. Id. By contrast here, Plaintiffs contend that Hines violated their constitutional rights through her course of action as an elected official performing her official duties in her role of town selectman at a public hearing. D. 1-3 ¶¶ 53-68. Public employees act under the color of law when they act in their official capacity. See West v. Atkins, 487 U.S. 42, 50 (1988) (noting that "generally, a public employee acts under the color of state law while acting

in his official capacity or while exercising his responsibilities pursuant to state law"). As alleged, Hines acted under the color of law when, pursuant to her duties as a town selectman, she publicly debated and voted on issues. See Sprint Spectrum L.P. v. Town of Easton, 982 F. Supp. 47, 53 n.4 (D. Mass. 1997) (noting that "it is beyond dispute that defendant, a local zoning board, acted under color of state law"). Accordingly, the Court declines to dismiss the Section 1983 claim brought against Hines in her individual or official capacity on this basis.

### 2. *Deprivation of Plaintiffs' Constitutional Rights*

Hines also challenges the Section 1983 claim by asserting that Plaintiffs have alleged no injury. D. 18 at 11. "The exercise of First Amendment rights is among the constitutionally proscribed reasons for the denial of a government benefit . . .[t]hus, [courts] have recognized, as a general matter, that '[c]laims of retaliation for the exercise of First Amendment rights are cognizable under [Section] 1983.'" Centro Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 9 (1st Cir. 2005) (alteration in original) (quoting Powell v. Alexander, 391 F.3d 1, 16 (1st Cir. 2004)). To prevail on a First Amendment retaliation claim, a "plaintiff must first prove that (1) he or she engaged in constitutionally protected conduct, (2) he or she was subjected to an adverse action by the defendant, and (3) the protected conduct was a substantial or motivating factor in the adverse action." D.B. v. Esposito, 675 F.3d 26, 43 (1st Cir. 2012).

Hines argues that Plaintiffs' First Amendment retaliation claim cannot go forward because Plaintiffs were not subject to an adverse action and therefore fail to meet the second element. D. 18 at 11. The typical adverse action in a permit application First Amendment retaliation case like this is "an adverse result from a government body," i.e., the denial of the permit application. Welch v. Paicos, 66 F. Supp. 2d 138, 170 (D. Mass. 1999). Hines was the only member of the five-member board, which ultimately approved Plaintiff's request, to vote against Plaintiffs' Rezoning Proposal.

6

D. 1-3 ¶ 68. Plaintiffs, therefore, did not experience the typical adverse result by a government body in this case: the denial of their request. This fact does not preclude their First Amendment retaliation claim since the definition of an adverse action is not so limited.

While the First Circuit has explained in the First Amendment employment retaliation context that it is "important to emphasize that not every action that an employer takes that a public employee may dislike constitutes the kind of adverse employment action that can ground a First Amendment retaliation claim," Delaney v. Town of Abington, 890 F.3d 1, 6 (1st Cir. 2018), "[e]ven 'relatively minor events' can give rise to [Section] 1983 liability, so long as the harassment is not so trivial that it would not deter an ordinary employee in the exercise of his or her First Amendment rights." Barton v. Clancy, 632 F.3d 9, 29 (1st Cir. 2011) (citations omitted). Although under this standard, verbal insults, standing alone, are insufficient to give rise to a First Amendment retaliation claim, Rosario-Urdaz v. Velazco, 433 F.3d 174, 179 (1st Cir. 2006), the conduct alleged here is not so minor.

The critical inquiry is whether the "campaign of informal harassment" would "deter a reasonably hardy individual from exercising his constitutional rights." Barton, 632 F.3d at 29 (citing Agosto-de-Feliciano v. Aponte-Roque, 889 F.2d 1209, 1218 (1st Cir.1989) (en banc)). Here, Plaintiffs allege that in retaliation to their protected expression and petition, Hines made false statements about Plaintiffs' business, D. 1-3 ¶¶ 57, 61-62, 65, voted against the proposal zoning change as a warrant article, id. ¶ 68, and threatened to vote against any future efforts by Plaintiffs, id. ¶¶ 66-67. These actions taken together amount to more than negative remarks that, standing alone, might be insufficient grounds on which to base a First Amendment retaliation claim. The complaint demonstrates that Plaintiffs' business has needed to seek votes from the Seekonk Board of Selectman, id. ¶¶ 12-13, 47-51, and that, at the time of this incident, Hines'

7

comments indicated that she was aware that the Board might be called to vote on Plaintiffs' requests in the future. Indeed, Hines specifically vowed not to support Plaintiffs' rezoning efforts but also vowed not to support "any permits to build any more condos" in the future. D. 1-3 Exh. 1 at 12:50-13:13. In context of these allegations, Plaintiffs have plausibly alleged conduct amounting to harassment that might deter a reasonable individual from exercising their First Amendment Rights. See Leahy-Lind v. Me. HHS, 13-cv-00389-GZS, 2014 U.S. Dist. LEXIS 131430, *59 (D. Me. Sept. 19, 2014) (concluding that a campaign of harassment was sufficient to state a valid adverse action for an employee's First Amendment retaliation claim). Accordingly, the Court does not dismiss the retaliation claim on this basis.

### 3. *First Amendment Defense*

Hines raises a First Amendment defense by asserting that her statement and votes were themselves constitutionally protected. D. 18 at 10-11. While the First Amendment protects elected officials while participating in a hearing on public policy, see Melville v. Town of Adams, 9 F. Supp. 3d 77, 101 (D. Mass. 2014), this right is not absolute, Mullin v. Town of Fairhaven, 284 F.3d 31, 37 (1st Cir. 2002).

Public officials may not use their position of authority to manipulate the treatment of certain individuals for participating in protected conduct. Brockton Power LLC v. City of Brockton, 948 F. Supp. 2d 48, 66 (D. Mass. 2013) (noting that "the First Amendment does not protect officials who 'use[] their positions of authority to manipulate the treatment of' certain individuals . . . to accomplish 'fraudulent or unlawful purposes'") (quoting S. Middlesex Opportunity Council, Inc. v. Town of Framingham, 752 F. Supp. 2d 85, 113 (D. Mass. 2010)). Although this Court recognizes that the First Circuit is "not typically receptive to retaliation claims arising out of government speech," Najas Realty, LLC v. Seekonk Water Dist., 821 F.3d 134, 143

(1st Cir. 2016), here, where Plaintiffs allege that Hines exercised her First Amendment right for a the unlawful purpose of retaliating against them, D. 1-3 ¶ 54, her first amendment defense does not warrant dismissal as a matter of law at this juncture. See Brockton Power LLC, 948 F. Supp. 2d at 66 (declining to dismiss claims because "[t]he First Amendment does not protect against claims arising from" allegations that defendants used their elected position to unlawfully target plaintiffs).

For all these reasons, the Court DENIES Hines's motion to dismiss the Section 1983 retaliation claim.

### B. Count II: Massachusetts Civil Rights Act Claim

Plaintiffs' second claim alleges that Hines violated the Massachusetts Civil Rights Act ("MCRA") by retaliating against Plaintiffs for exercising their First Amendment rights. D. 1-3 ¶¶ 94-99; Mass. Gen. L. c. 12 §§ 11H-11I. To establish a claim under the MCRA, a plaintiff must demonstrate first that "his exercise or enjoyment of rights secured by the Constitution or laws of either the United States or of the Commonwealth . . . has been interfered with, or attempted to be interfered with, and . . . that the interference or attempted interference was by 'threats, intimidation or coercion.'" Bally v. Ne. Univ., 403 Mass. 713, 717 (1989); Kennie v. Nat. Res. Dep't of Dennis, 451 Mass. 754, 759 (2008) (quoting Buster v. George W. Moore, Inc., 438 Mass. 635, 644 (2003)). The MCRA operates co-extensively with Section 1983 so that stating a Section 1983 claim states a partial claim under the MCRA. See Najas Realty, LLC, 821 F.3d at 141.

The MCRA is "narrower than [Section] 1983 in that it limits its remedy to conduct that interferes with a secured right 'by threats, intimidation or coercion.'" See Nolan v. CN8, 656 F.3d 71, 76-77 (1st Cir. 2011) (citing Mass. Gen. L. c. 12 § 11H). MCRA claims are typically based on physical coercion, and the "exception for claims based on non-physical coercion remains a

9

narrow one." Id. at 78 (citation omitted) (quotation omitted); see Willitts v. Roman Catholic Archbishop, 411 Mass. 202, 210 (1991) (concluding that an employer's refusal to renew an expired contract because the employee attempted to form a union was not actionable under the MCRA because the employer merely "exercised its discretion under the terms of employment it chose to offer its teachers"); see also Webster v. Motorola, Inc., 418 Mass 425, 429-30 (1994) (declining to find MCRA claim when defendants allegedly interfered with at-will employment); Nolan, 656 F.3d at 76 (observing that "at most" the Supreme Judicial Court has suggested that "an employer's breach of contract" in retaliation to First Amendment expression "might be sufficiently coercive to warrant relief under the MCRA" citing Redgrave v. Boston Symphony Orchestra, Inc., 399 Mass. 93 (1987)).

Unlike the Section 1983 claim at this juncture, it is perhaps a closer call on whether Plaintiffs' MCRA claim survives as it is required that Hines's actions, as alleged, amount to interference with Plaintiffs' constitutional rights by "threats, intimidation and coercion." During a public hearing and as part of her function as a town selectman, Hines questioned Plaintiffs about their intention and motives behind rezoning. Plaintiffs allege that Hines accused them of "not keeping their promises to the residents of Greenbrier Village and not properly maintaining the residential units," D. 1-3 ¶ 57, admonished Plaintiffs by stating that they "shouldn't have maligned used car dealers," id. ¶ 63, and threatened to oppose any efforts by Plaintiffs to rezone the Showcase Property or otherwise construct condominiums in Town, id. ¶¶ 66-68. Although the outcome may be different at summary judgment, see Whyman v. Whalen, No. 16-cv-10049-LTS, 2018 WL 3130630, at *6 (D. Mass. June 22, 2018) (concluding at the summary judgment stage that, among other things, a "single, isolated statement, which was not made to [plaintiff], is not enough to constitute a threat, intimidation, or coercion for the purposes of the MCRA. . . .[and]

10

the record is devoid of any evidence that [defendant] intended to interfere with [defendant's] free speech right"), here, Plaintiffs have plausibly alleged a MCRA claim against Hines. See Thomas v. Town of Chelmsford, 267 F. Supp. 3d 279, 310 (D. Mass. 2017) (declining to dismiss a MCRA claim when plaintiffs alleged that two teachers ridiculed them in front of other students in retaliation for plaintiff having spoken up about harassment); Roberts v. Town of Bridgewater, No. 15-cv-10266-DJC, 2015 WL 4550783, at *6 (D. Mass. July 28, 2015) (declining to dismiss MCRA claims where defendants allegedly attempted to interfere with plaintiff's right to redress his injuries by threatening him with criminal charges and continuing to pursue those charges). Accordingly, the Court DENIES the motion to dismiss Plaintiffs' MCRA claim.

### C. Count III: Defamation Claim

Plaintiffs also bring a defamation claim against Hines.[1] D. 1-3 ¶¶ 100-106. Plaintiffs allege that Hines's public and disparaging comments regarding Plaintiffs' business constitute defamation. Id. ¶¶ 100-106. "To prevail on a defamation claim, a plaintiff must 'establish that the defendants published a false statement about him to a third party that either caused him economic loss or was the type that is actionable without proof of economic loss.'" Driscoll v. Bd. of Trs. of Milton Acad., 70 Mass. App. Ct. 285, 295-96 (2007) (quoting Phelan v. May Dep't Stores Co., 443 Mass. 52, 55-56 (2004)). Specifically, a plaintiff must establish (1) "that the defendant [ ] published a false statement about him to a third party" and (2) that the false statement "either caused [the plaintiff] economic loss or was of the type that is actionable without proof of economic loss." Phelan, 443 Mass. at 55-56.

---

[1] Although Plaintiffs plead their defamation claim as defamation and defamation *per se*, Massachusetts has "abolished the distinction between *per se* and *per quod* defamation." Simas v. First Citizens' Fed. Credit Union, 63 F. Supp. 2d 110, 116 (D. Mass. 1999) (citing Sharratt v. Hous. Innovations, Inc., 365 Mass. 141, 147 (1974)).

While Hines does not appear to challenge either of these elements specifically, this Court notes that Plaintiffs have successfully pled these elements for at least two of Hines's statements. Among other things, Plaintiffs allege that Hines falsely accused them of "not keeping up on their promises to the residents of Greenbrier Village and not properly maintaining the residential units in, and infrastructure servicing Greenbrier Village," D. 1-3 ¶ 57, and also attempting to offer a "bribe" to certain residents there. Id. ¶ 60. Hines published this statement when she spoke publicly on the matter with others present at the town meeting. See Ravnikar v. Bogojavlensky, 438 Mass. 627, 629 (2003). These alleged statements "would tend to hold the plaintiff up to scorn, hatred, ridicule or contempt, in the minds of any considerable and respectable segment in the community," Phelan, 44 Mass. at 56 (citations omitted), and is therefore, may be a plausible basis for defamation. As such, statements that damage a business reputation are actionable without proof of economic loss. White v. Blue Cross &Blue Shield of Massachusetts, Inc., 442 Mass. 64, 69 n.10 (2004) (noting that harm to "plaintiff's professional or business reputation are actionable without proof of economic loss").

Instead, Hines challenges the defamation claim by asserting that her statements as a public official are protected by the conditional privilege. A public official is conditionally privileged to make otherwise defamatory statements while performing public duties so long as the official does not act with malice or otherwise abuse this privilege. See Mulgrew v. Taunton, 410 Mass. 631, 634 (1991); Dragonas v. Sch. Comm. of Melrose, 64 Mass. App. Ct. 429, 439 (2005). Plaintiffs do not assert that Hines acted with actual malice, but instead argue that Hines abused her conditional privilege. See Catrone v. Thoroughbred Racing Ass'ns of N. America, Inc., 929 F.2d 881, 890 (1st Cir. 1991) (explaining that the conditional privilege does not survive "an abuse of the privilege").

The conditional privilege is abused when "defamatory matter is published for some purpose other than that for which the particular privilege is given." Id. (internal citation and quotation marks omitted). The purpose of the conditional privilege "is to permit public officials to speak freely on matters of public importance.'" Landry v. Mier, 921 F. Supp. 880, 888 (D. Mass. 1996) (quoting Mulgrew, 410 Mass. at 635). Plaintiffs have pled that Hines published the defamation for a retaliatory purpose in abuse of the conditional privilege. Specifically, Plaintiffs allege that Hines's purpose was, among other things, to "intimidate and coerce them into withdrawing the RISH zone petition" and "retaliate against and punish Plaintiffs for speaking and voting against" the earlier 2017 rezoning attempt. D. 1-3 ¶ 54. These alleged purposes cannot be said to be in furtherance of Hines's duty as a town official to speak freely on matters of public importance. For all these reasons, Plaintiffs have plausibly alleged a defamation claim and the Court DENIES Hines's motion to dismiss this claim.

## VI. Conclusion

For the foregoing reasons, the Court DENIES Hines's motion for judgment on the pleadings. D. 17.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge